The next matter before us is David Wetzel v. Nancy Berryhill. Good morning, Counsel. Good morning, Your Honor. My client, David Wetzel, was injured in a motorcycle crash on July 6, 2013, and it's uncontroverted that this resulted in cervical disc herniations and nerve impingements in his neck, but he also suffered pain and weakness in his legs. This would be his alleged onset date. But he didn't file his claim for SSI until February 27, 2014, so that's when, as a matter of law, his benefits could start. And then on June 24, 2014, about a year after the crash, he had a cervical fusion. This is, again, almost a year later. And after that cervical fusion, we see that he had a lot of treatment from his treatment providers, and they noted that his neck pain started getting better, but he continued to have symptoms from his cervical impairments. He had weakness and numbness in his hands, and he had some neck pain. But in addition, after that time, he started complaining more about his legs and numbness in his feet and his legs. There was an X-ray in July of 2015 that showed low back spondylosis at L3-L4, and he was diagnosed with lumbar degenerative disc disease, cervical parathesias, failed back syndrome. So for over a year, he was unable to work, and therefore he should be considered disabled. And his neck pain did get better, and his leg pain got better with the use of oxycodone. The judge here, the ALJ, erred at Step 2 by not finding his cervical radiculopathy to be disabling before the surgery, 11 months, and then also after the surgery, because he continued to have pain, and he continued to have numbness in his hands. And the judge did not find lumbar spondylosis as a severe impairment at Step 2, and a severe impairment is this one that minimally would affect your ability to work. The ALJ only considered his status post-cervical fusion and obesity. The ALJ also erred by relying on the report of a non-examining consultant to overrule the objective reports, to overrule the clinical studies, and this doctor only looked at the records of the treating doctors and of Dr. Wasif, who was the ALJ's own examining physician. And Dr. Fuchs, the non-examining consultant, didn't even consider the lumbar spinal impairments, and he didn't consider the 11 1⁄2 months between the date of the accident and the date of the surgery. And he didn't consider whether my client... Why was the latter relevant? Help me out. Well, because to be disabled, you have to be unable to work for a period of a year. No, no, I understand that, but you say he didn't consider that. That was an undisputed fact. I'm trying to suggest how his failure to reference it was something that should concern us. Sure, he should have said before, you know, for a year he did have marked impairments. He had a nerve impingement. How would that have affected the... Why does that show that it's error? Because as you said, there was improvement after that. He had the surgery. I'm not suggesting your client doesn't have serious concerns, but I'm just focusing on that 11-month period. There's a change from what your client's condition was during that 11 months to what it was after that. So how does Dr. Fuchs's failure to reference that become significant? Well, there was a closed period that he could have been disabled for if he had really improved. But I guess that would be that he didn't consider it. It's your other arguments that are more of concern, right? Yeah, and Dr. Fuchs... You're arguing that he gave undue weight to Dr. Fuchs. You argue that they gave undue weight to Dr. Fuchs, right? He gave great weight, overwhelming weight to Dr. Fuchs and very little to the treating physicians and sources. They're not all physicians. He did that because of the consistency of that opinion with the record is what he said, that it was more consistent with the record before him, Dr. Fuchs's evaluation. Isn't that true? That's what he said. He said that, but that doesn't... The opinion of a non-examining physician cannot be given more weight. It's not substantial evidence, because then that's really the judge saying, giving his interpretation. Most doctors don't offer their opinion. They mostly report what the plaintiff is reporting to them. So what is it... I mean, I understand that certainly if a treating physician had said that he was totally and completely disabled, that rules about how to weigh that would have been triggered. But that's not this case. You're right. But we do have the objective test. We have the surgery. We have the X-ray of his lumbar spine. The treating sources credit it. Isn't the problem that the reports, while they show those conditions, don't show deficits in his ability to, you know... They don't show physical deficits consistent with total disability. Right, because his problems were numbness in his hands, were pain, and he was taking oxycodone to limit his pain. Now, he never said it was a side effect to his doctors, that he felt dopey, but that's the purpose of oxycodone. He didn't complain of that. No, no, he didn't complain. That's the problem, because I think we all understand the significance of that drug, but where he doesn't claim that it contributes to any deficits that affect his work, why would there be an expectation that someone would think so? Well, he did, though. He testified it made him dopey, and that's why they call it dope. That's why it's illegal in New York to drive while you'd be driving while ability impaired with oxycodone. And his credibility is a very important issue, and the judge held it against him that he went shopping, that he took care of his pets, that he weed-whacked and mowed the lawn, but he was very honest about that. And then he was also honest about how hard it was, how we had to stop at times and rest, and how we spent most of the day in a chair, in a recliner, based on his pain, based on his fatigue, his dopiness. So that I all saw, but I may not have saw where he attributed what you're calling dopiness to the oxycodone. Maybe when you give rebuttal you can point us to where that is in the record. Okay, thank you. You have reserved two minutes for rebuttal. We'll hear from the government. May it please the Court, my name is Peter Jewett, the Commissioner of Social Security. Your Honors, the Commissioner's decision that Wetzel was not disabled is supported by substantial evidence and free of harmful legal error. Therefore, it should be affirmed. First, I'd like to discuss the medical opinions. Mr. Wetzel has argued that the ALJ afforded too much weight to the opinion of the medical expert, Dr. Fuchs, and that Wetzel would have preferred that the ALJ gave greater weight to the opinion of the consultative examiner, Dr. Wassoff. However, this Court has repeatedly held that the ALJ may choose between properly submitted medical opinions. We give a preference, and the ALJ is required to give a preference to treating physicians. Isn't that correct? Correct, and there was no opinion by a treating physician. There were just notes. Correct, only medical notes from those treating sources. May I ask you with respect to Dr. Wassoff, who's the other consulting physician, but he actually saw the plaintiff? Your brief argues that he didn't have all the reports. What was missing from what Dr. Wassoff saw? Is it anything other than Dr. Fuchs's subsequent report? And Dr. Wassoff, I believe, did not have the treating notes from the ‑‑ whereas Dr. Fuchs had access to the entire medical record. Yes. Dr. Wassoff did not have those reports before him. He didn't have the treating physician reports? As I recall, correct. Okay, thank you. Additionally, there are other reasons that the ALJ is entitled to give greater weight to that opinion versus Dr. Wassoff's. As the ALJ pointed out, there was a striking difference between what Dr. Wassoff observed clinically through objective medical evidence and then his conclusions about that. So Dr. Wassoff finds that Mr. Wetzel has full muscle strength and normal sensation and then finds higher limitations than would be expected for that level of clinical findings. Furthermore, Dr. Fuchs is an orthopedic surgeon. Dr. Wassoff is a primary care physician. There are reasons why the ALJ is entitled to credit Dr. Fuchs as being more consistent with the overall evidence than Dr. Wassoff. It was consistent with the record presented. Correct. That's what the ALJ said. Correct, Your Honor. Now, I want to point out, however, that although Dr. Fuchs and Dr. Wassoff's opinions differed, they're not drastically different. On many areas, they agreed. Both assessed that Mr. Wetzel could stand and walk for an hour each at a time. Both stated that he could never climb ladders or ropes, that he could occasionally be exposed to unprotected heights. They both agreed that he was able to shop, to travel alone, to ambulate without assistance, to walk at a reasonable pace, to climb a few steps at a reasonable pace, to prepare food, to take care of his personal hygiene, to use his hands for handling paper files, sorting, handling. That's on pages 404 and 352. They agree on all those facts. Did Dr. Fuchs or Dr. Wassoff comment on the effects of oxycodone? If I understand it, this is a patient for whom oxycodone is necessary to alleviate the pain he suffers. It does give him relief. And now the question is whether the consequences of being on that kind of a strong medication render him unable to work. Did any of the doctors speak to that? Neither the consultative doctor nor Dr. Fuchs specifically spoke about side effects. However, there are references in the record to the side effects. When Mr. Wetzel applied for benefits, he denied problems paying attention. He said he could finish what he started. He could follow spoken and written instructions, and he had no trouble remembering things. Later in the treatment records, he specifically denies side effects on more than one occasion, pages 245 and 251 of the record. On a different page of the record, he says that he has side effects from his medication. It's the Tylenol that was mixed into the oxycodone that made his... They take him off the Tylenol. Correct. They titrated to a different version of the same drug that doesn't include the Tylenol that was upsetting his stomach. There's nothing in the record where he's coming in and saying, Doc, this is making me lethargic. I need you to try something else or, you know, use other modalities. In fact, those other modalities were offered to him, injections, physical therapy, and he declined to do so. Now, he may have declined to do so for financial reasons, but he was able... The record demonstrates that he was able to afford the treatment that he ended up taking, as well as the record supports... The record shows that he travels to Florida. He travels to Maryland. He has hobbies that he takes up. We believe that the record shows that these side effects support the ALJ's interpretation here. As I was stating, Dr. Fuchs and Dr. Wetzel's opinions are not markedly different. In fact, Dr. Wassef opined in several areas restrictions that were more restrictive than what Dr. Fuchs ultimately found. For example, Dr. Fuchs stated that Wetzel should never use his left foot to operate foot controls, where Dr. Wassef said he could do so occasionally. Dr. Fuchs stated that Wetzel could occasionally be exposed to extreme heat, and Dr. Wassef said he could do so continuously. So this is not the case where the ALJ just adopted an opinion that said that Mr. Wetzel could perform heavy work because that was outcome determinative. These were both in line with a sedentary or a range of light work. Moreover, Dr. Fuchs's opinion is consistent with the treatment records. Of the roughly two dozen examinations by treating sources in the relevant period, about 15 yielded completely unremarkable or normal findings, and the others exhibited only slightly abnormal or mild findings. Indeed, the record demonstrates that the surgery and medication markedly improved Mr. Wetzel's symptoms, and no treating source ever assessed limitations on Mr. Wetzel whatsoever. So he can't be a welder anymore, but he can hold a job. Correct, Your Honor. And all of the jobs identified by the vocational expert at Step 5 are consistent with that RFC, toll collector, office helper, and inspector and hand packager. Are there still toll collectors? Your Honor, I drove to western New York this weekend, and I saw toll collectors all between here and western New York. But the length of time that toll collectors will be a job is finite, don't you think? That's a possibility at some point in the future, but I swear I saw them this weekend. And what else were the jobs that were listed besides toll collectors? Office helper, which furnished...  I'll provide you the definition, Your Honor. An office helper furnishes workers with clerical supplies, opens, sorts, and distributes incoming mail, and collects, seals, and stamps outgoing mail. They deliver oral and written messages, collect and distribute paperwork such as records or time cards from one department to another. There are roughly 20,000 such positions in the national economy that... What about in the economy where Mr. Wetzel resides? Respectfully, Your Honor, that's not a relevant consideration under the act, the Social Security Act, which speaks only to the national numbers. So he would have to move to find a job as an office helper somewhere? No, Your Honor. That question was never asked because it's not relevant under the statute. And what are the other jobs that are available? The other job was inspector slash hand packager, which inspects molded plastic products such as bottle caps or tops for defects, packs inspected products into shipping cartons and the like. All of them, none of those three jobs requires handling and reaching more than frequently, which is consistent with the RFC finding. With that, if the panel doesn't have any more questions. Thank you. Thank you. So to address your question, Judge Rodgey, he just mentioned that he had dopiness and sleepiness. Where? It's page 44 of the record in his testimony. And that gets us to the credibility. With counsel's argument that he specifically disavowed any limitations in his application? In his application, he was very honest of what he could and couldn't do. And I think that bolsters his credibility. At his hearing, he testified several years later of what his limitations were. I mean, he admitted he could do some things, but on a limited basis. But why would he admit that he could do things that would show he's not disabled and then talk about the problems using his hands, that he dropped things, talk about the numbness that he could barely walk, and that he spent half the day in the recliner? None of the doctors thought he was exaggerating. And, in fact, they mentioned that he was a good historian. There is not substantial evidence to show that he was not credibly reporting his limitations. And as a matter of law, the non-examining doctor, you would need to find by clear and convincing evidence that his opinion was more valuable or had more weight than the treating physicians or the examining physicians. The treating physician didn't give an opinion. That was the problem. The treating physician only submitted notes, which were the self-reported notes from Mr. Wetzel. And that's correct, but that's part of a clinical determination. There is no objective way to assess pain. There's no objective way to assess numbness and parathesias, which are the reasonable results of having a fusion, an impairment, and also lumbar spondylosis. And Dr. Fuchs did not consider his lumbar impairment. And you should remand for a new hearing. I think the judge erred by giving too much weight to Dr. Fuchs, and there is not substantial evidence to support this decision. Thank you. Thank you. Thank you. We'll reserve the decision.